Honorable Sid Snyder Senator, 19th District P.O. Box 531 Long Beach, WA 98631
Dear Senator Snyder:
By letter previously acknowledged, you requested the opinion of this office on the following questions:
 Does a code city have the authority to contract with a non-governmental entity for the construction of a jail?
 Does a code city have the authority to lease a jail from a non-governmental entity?
 Assuming that the city employs the chief administrative officer of the jail and retains direct accountability, does a code city have the authority to contract with a non-governmental entity for services associated with the jail? These services could include (but would not be limited by this list) food services, janitorial services, guarding inmates, community supervision, medical services, laundry, education, building maintenance and security.
Your questions are expressly premised on the assumption that "all applicable Washington State standards for jail facilities and Washington State standards and training requirements for these services would be applied as if the service providers were city employees".
 BRIEF ANSWER
A code city is authorized to contract with a non-governmental entity for the construction of a jail. A code city is not authorized to lease a jail from a private party. A code city is not authorized to contract with a non-governmental entity for such entity to provide jail services where such services involve the overall management of an institution or the performance of other correctional or law enforcement functions. A code city is authorized to contract with a non-governmental entity for such entity to provide jail-related services that do not involve the overall management of an institution or the performance of other correctional or law enforcement functions.
 ANALYSIS
Your first question, repeated for ease of reference, inquired as follows:
1. May a code city contract with a non-governmental entity for theconstruction of a jail?
Cities operating under the optional municipal code, RCW Title 35A, possess extremely broad powers. Such cities have legislative power similar to that of the state except for actions that contravene the constitution or statutes. RCW 35A.11.020. This authority includes the power to contract with private parties. See, e.g., Shaw Disposal, Inc. v. City ofAuburn, 15 Wn. App. 65, 546 P.2d 1236 (1976) (code city may contract for garbage disposal without restriction unless prevented by the constitution, general law, or ordinance) (citation omitted).
We are not aware of anything in the state constitution or in the general law of the state that would prohibit a code city from contracting with a non-governmental entity for the construction of a jail. Indeed, as a practical matter, we would expect most major municipal capital projects to be constructed at least in part through contracts with non-governmental entities.
Thus, in answer to your first question, in our opinion a code city is authorized to contract with a non-governmental entity for the construction of a city jail.
Your second question, repeated below, is as follows:
2. May a code city lease a jail from a non-governmental entity?
In general, code cities possess broad authority to acquire property for municipal purposes. See RCW 35A.11.010 (providing in part that code cities may "purchase, lease, receive, or otherwise acquire real and personal property of every kind"); RCW 35A.11.020 (providing in part that code cities may exercise power in regard to "the acquisition, sale, ownership, improvement, maintenance, protection, restoration, regulation, use, leasing, disposition, vacation, abandonment or beautification of public ways, real property of all kinds, waterways, structures, or any other improvement or use of real or personal property"). See also 10 Eugene McQuillan, The Law of MunicipalCorporations § 28.10 (3d ed. 1999) ("When necessary to promote its public purposes, the municipal corporation usually is empowered to become the lessee of property. Also, the power to acquire property implies the power to lease, or to lease with an option to purchase".).
However, the Legislature has significantly limited the power of cities and counties with respect to jails. In 1977, apparently after years of study, the Legislature enacted Laws of 1977, 1st Ex. Sess., ch. 316, the "City and County Jails Act" (hereinafter the "Act"), codified in RCW 70.48. The Legislature articulated the state's policy and purpose in this legislation as follows:
 It is the policy of this state that all city and county jails provide a humane and safe environment. It is the purpose of this chapter (1) to require classification of county and city jails on the basis of their purpose and their function in order to provide for (a) the setting of state-wide mandatory custodial care standards that are essential for the health, welfare, and security of persons confined in jails, (b) advisory custodial care minimum standards, and (c) physical plant minimum standards, (2) to aid the Washington state criminal justice training commission in developing and implementing personnel training and qualification standards, and (3) to provide for a determination of the role of the state and local units of government with regard to the custody of persons who are arrested for and/or convicted of violating statutes or ordinances which define crimes. The legislature also finds that in order to accomplish the purpose of this chapter it is necessary for the state to provide adequate funds to enable units of local government to fully comply with the physical plant minimum standards for detention and correctional facilities.
Laws of 1977, 1st Ex. Sess., ch. 316, § 1.
An overarching principle of the Act was the requirement that "All jails shall be constructed, operated, and maintained in compliance with the provisions and intent of this chapter and the rules, regulations, and standards adopted thereunder". Laws of 1977, 1st Ex. Sess., ch. 316, § 7. The Act defined "jail" to mean "any holding, detention, or correctional facility as defined in this section." Laws of 1977, 1st Ex. Sess., ch. 316, § 2(4). "Holding facility," "Detention facility," and "Correctional facility" were in turn defined as follows:
 "Holding facility" means a facility operated by a governing unit primarily designed, staffed, and used for the temporary housing of adult persons charged with a criminal offense prior to trial or sentencing and for the temporary housing of such persons during or after trial and/or sentencing, but in no instance shall the housing exceed thirty days.
 "Detention facility" means a facility operated by a governing unit primarily designed, staffed, and used for the temporary housing of adult persons charged with a criminal offense prior to trial or sentencing and for the housing of adult persons for purposes of punishment and correction after sentencing or persons serving terms not to exceed ninety days.
 "Correctional facility" means a facility operated by a governing unit primarily designed, staffed, and used for the housing of adult persons serving terms not exceeding one year for the purposes of punishment, correction, and rehabilitation following conviction of a criminal offense.
Laws of 1977, 1st Ex. Sess., ch. 316, §§ 2 (1) ("Holding facility"), (2) ("Detention facility"), (3) ("Correctional facility") (emphasis added). The Act defined "governing unit" to mean "the city and/or county or any combinations of cities and/or counties responsible for theoperation, supervision, and maintenance of a jail". Laws of 1977, 1st Ex. Sess., ch. 316, § 2 (10) (emphasis added).
Significantly, the Act appears to have narrowed cities' preexisting authority with respect to jails. The Act in effect conformed such authority to the strictures and requirements of the Act. RCW 35.21.330, a grant of authority applicable to all cities and towns, was amended in the following fashion:
 Cities and towns may acquire, build, operate and maintain ((jails, workhouses, workshops, stockades and other places of detention and confinement)) holding, detention and correctional facilities as defined in section 2 of this 1977 amendatory act at any place within the territorial limits of the county in which the city or town is situated, as may be selected by the legislative authority of the municipality: PROVIDED, That such facilities comply with the provisions of sections 1 through 16 of this 1977 amendatory act and rules adopted thereto.
Laws of 1977, 1st Ex. Sess., ch. 316, § 19.
Thus, the Act produced the following results, among others: (1) The imposition of mandatory physical plant and custodial care standards, (2) the establishment as an express limitation upon a city's authority with respect to jails the requirement that jails comply with all requirements of the Act, (3) the express defining of jails as certain facilities "operated by" a governing unit, and (4) the express imposition upon cities and counties as governing units the responsibility for the "operation, supervision and maintenance" of jails.
In 1979 the Legislature amended the Act. Laws of 1979, 1st Ex. Sess., ch. 232 (hereinafter the "1979 Act"). Insofar as relevant to the question under consideration, in the 1979 Act, the Legislature expressly authorized contracts between counties and cities for jail services. The relevant language is as follows:
 Contracts for jail services may be made between a county and city located within the boundaries of a county, and among counties. The contracts shall: Be in writing, give one governing unit the responsibility for the operation of the jails, specify the responsibilities of each governing unit involved, and include the applicable charges for custody of the prisoners as well as the basis for adjustments in the charges. The contracts may be terminated only by ninety days written notice to the governing units involved and to the [state jail] commission. The notice shall state the grounds for termination and the specific plans for accommodating the affected jail population.
Laws of 1979, 1st Ex. Sess., ch. 232, § 15(1) (emphasis added). In addition, the 1979 Act provided that "[a] person convicted of an offense punishable by imprisonment in a city or county jail may be confined in the jail of any city or county contracting with the prosecuting city orcounty for jail services". Laws of 1979, 1st Ex. Sess., ch. 232, § 19 (emphasis added).
In 1983, as part of a bill relating to drunk driving and related sentencing reforms, the Legislature again amended the Act. In Laws of 1983, ch. 165 (hereinafter the "1993 Act"), the Legislature authorized cities and counties to establish special detention facilities for certain sentenced persons considered not to pose significant security risks. Notably, the 1983 Act authorized these special detention facilities to "be operated by a noncorrectional agency or by noncorrectional personnel by contract with the governing unit". Laws of 1983, ch. 165, § 39(4).
Considering the 1977, 1979, and 1983 Acts together, as well as the 1987 amendments to the Act, we conclude that the Legislature has authorized cities to contract only with the county within which a given city is located for general jail services, and with "noncorrectional agenc[ies]" or "noncorrectional personnel" for the operation of special detention facilities. In other words, we do not believe that the Legislature has authorized cities to lease jails from non-governmental entities.
We recognize that one may attempt to read the requirement that jails be "operated" by cities or counties as referring only to the management, as opposed to ownership, of facilities. We would find such an attempt unpersuasive. As noted above, "Governing unit" is defined with reference to "cities and/or counties responsible for the operation, supervision,and maintenance of a jail". RCW 70.48.020(7) (emphasis added). We view the comprehensive and cumulative nature of a city or county's responsibilities to operate, supervise, and maintain jails to be inconsistent with an interpretation that jails may be owned by a non-governmental entity. Moreover, RCW 70.48.220 provides that "[a] person convicted of an offense punishable by imprisonment in a city or county jail may be confined in the jail of any city or county contracting with the prosecuting city or county for jail services". (emphasis added). We believe that this provision clearly contemplates city or county ownership of jails.
More generally, the integrated nature of jails within the context of the state's overall correctional system makes us believe that the Legislature would have spoken in unmistakably clear terms if it had intended to authorize private ownership of facilities that may confine not only those persons held, detained, or housed in connection with municipal infractions, but also those held or detained for violations of state criminal laws and destined for state correctional facilities. However, our review of the legislative history of the Act, and of the 1979, 1983 and 1987 Acts, did not disclose any suggestion or consideration of the potential or authority for private ownership of holding, detention, or correctional facilities. Compare MICH. COMP. LAWS § 117.4e (2000) (providing in part that Michigan home rule cities may provide in their charters "[f]or the acquisition by purchase, gift, condemnation, lease, construction or otherwise . . . the following improvements including the necessary lands therefor, viz: . . . police stations . . . city prisonsand workhouses, penal farms, institutions . . . (emphasis added); TEX. LOC. GOV'T CODE § 361.061 (in part authorizing Texas municipalities to contract with private prison contractors for the leasing of jails and related facilities). We also note that the Legislature's most recent enactment with respect to city and county jails appears not to contemplate the concept of private ownership of such facilities. See Laws of 2000, ch. 3 (providing in part for the implementation of an electronic state-wide "city and county jail booking and reporting system" capable of communicating with "every Washington state city and county jail" and the provision by certain "city and county jails" of certain information to the Washington Association of Sheriffs and Police Chiefs).
As a practical matter, it seems unlikely to us that a non-governmental entity would seek to lease a jail to a city without also seeking a contract to provide jail-related services to the city. Be that as it may, while the practical and policy issues relating to a stand-alone lease may be less complex than a situation involving the private ownership and private management of a jail, for the reasons discussed above, we nevertheless do not believe that the Legislature has authorized code cities to lease jails from non-governmental entities.
Thus, in answer to your second question, in our opinion a code city may not lease a jail from a non-governmental entity.
Your third question, repeated here for ease of reference, is as follows:
3. Assuming that the city employs the chief administrative officer of thejail and retains direct accountability, does a code city have theauthority to contract with a non-governmental entity for servicesassociated with the jail? These services could include (but would not belimited by this list) food services, janitorial services, guardinginmates, community supervision, medical services, laundry, education,building maintenance and security.
RCW 70.48 requires a city that is primarily responsible for the operation of a jail to discharge that responsibility either through its own corrections department, if there be one, or through the city's chief law enforcement officer. In this regard, RCW 70.48.090(3) provides as follows:
 A city or county primarily responsible for the operation of a jail or jails may create a department of corrections to be in charge of such jail and of all persons confined therein by law, subject to the authority of the governing unit. If such department is created, it shall have charge of jails and persons confined therein. If no such department of corrections is created, the chief law enforcement officer of the city or county primarily responsible for the operation of said jail shall have charge of the jail and of all persons confined therein.
(emphasis added).
Where a statute confers specific functions to particular municipal officers or boards, such functions may not be delegated to others unless the statute expressly authorizes such delegation to some other officer or body. Noe v. Edmonds School District, 83 Wn.2d 97, 103, 515 P.2d 977
(1973). See also Roehl v. PUD 1, 43 Wn.2d 214, 240, 261 P.2d 92 (1953) ("Where the enabling legislation under which a municipal or quasi-municipal corporation derives its power confides legislative or discretionary functions in particular officials or boards, such functions may not be delegated to others.") However, "those in whom such functions repose may delegate to others the performance of duties of a purely ministerial or administrative nature." Roehl v. PUD 1, 43 Wn.2d at 240.
The Act does not expressly authorize the corrections departments or chief law enforcement officers of governing units to delegate to others the duty to "have charge of such jail and of all persons confined therein by law". In this connection, we note again that the Act specifically authorizes a city to contract for jail services only with the county in which it is located. The Act does not define "jail services". However, given the purpose and structure of the Act, we think "jail services" logically refers to the provision of space for the holding, detention, or housing of persons, as well as to the overall management of a jail and to the performance of other jail-related correctional and law enforcement functions. Any reading of "jail services" as excluding the overall management of a jail or the performance of other jail-related correctional and law enforcement functions would, we believe, render meaningless the Legislature's specific delegation to corrections departments or chief law enforcement officers of the responsibility to "have charge of jails and all persons confined therein".
We find it useful at this point to return to the definition of "jail": a holding, detention, special detention or correctional facility "operatedby a governing unit". RCW 70.48.020 (emphasis added). The performance by a non-governmental entity of correctional or law enforcement functions with respect to a given facility would seem to render that facility something other than a "jail". As noted above, a city's authority with respect to jail-type facilities is limited to "jails". RCW 70.48.180.
Thus, we must conclude that a code city is not authorized to contract with a non-governmental entity for the provision of jail-related services involving the overall management of a jail or the performance of other correctional or law enforcement functions. By way of reference to the list of examples contained in your third question, we believe such services would include community supervision, the guarding of inmates, and general jail security.
Conversely, we do not view either the language or purpose of the Act as precluding a city from contracting for jail-related services with a non-governmental entity where such entity will not be responsible for the overall management of a jail and will not perform other correctional or law enforcement functions. Stated another way, to the extent that these other services may be viewed as within the corrections department's or chief law enforcement officer's responsibility to have "charge of [the] jail and of all persons confined therein", such services can reasonably be viewed as administrative functions and thus susceptible of performance by others through proper contracting procedures.
We emphasize that our conclusions are not the result of the rote application of legal principles relating to municipal officers. As discussed in connection with your second question, city and county jails form an important part of an integrated, statewide system of holding, detention, and correctional facilities. Persons incarcerated in city jails often are or become committed to the custody of the Department of Corrections. Moreover, the Legislature has specifically declared that it is the policy of this state that city and county jails meet certain standards. Thus, we do not find it surprising that, within the framework of a statute designed to establish and maintain certain standards applicable to all jails, the Legislature specifically placed the responsibility for the charge of jails and inmates with those persons arguably in the best position to exercise the most direct control over such matters, i.e. city and county corrections departments or law enforcement agencies.
Finally, and not incidentally, we note that, unlike the Act, statutes from some other states provide express authority for cities to contract with non-governmental entities for the operation of correctional facilities. See, e.g., TEX. LOC. GOV'T CODE § 361.061 (authorizing the governing body of any Texas municipality to "contract with a private vendor or a county to provide for the financing, design, construction, leasing, operation, purchase, maintenance, or management of a jail, detention center, work camp, or related facility."); ARK. CODE ANN. § 12-50-106 (a) (authorizing the Arkansas corrections department, regional corrections commissions, and political subdivisions "to enter into contracts with each other and with prison contractors for the financing, acquiring, constructing and operating of facilities".)
 CONCLUSION
A code city is authorized to contract with a non-governmental entity for the construction of a jail. A code city is not authorized to lease a jail from a non-governmental entity. A code city is not authorized to contract with a non-governmental entity for such entity to provide jail-related services involving the overall management of a jail or the performance of other correctional or law enforcement functions. A code city is authorized to contract with a non-governmental entity for such entity to provide jail-related services that do not involve the overall management of a jail or the performance of other correctional or law enforcement functions.
We trust the above will be of assistance.
Very truly yours,
ROBERT J. FALLIS Assistant Attorney General